Citibank, N.A. v. 157-36B, LL.C. Thank you. Good afternoon. Good afternoon. May it please the court. Daniel Saval from Cobra and Kim on behalf of Appellants. The court should reverse the district court orders for three principal reasons. First, in the case of one of the third parties, Aralpa Miami Investments. I apologize. There's a switch on the left hand side. No, of the lectern. Right there. You can raise it up. I'll just speak louder. In the case of third party Aralpa Miami Investments, the district court erred as a matter of law by not applying Georgia law, the law of the state of incorporation, which prohibits veil piercing. Reverse veil piercing, that is. Second, the district court erred as a matter of law by not requiring Citibank to reverse pierce the corporate veil of the actual shareholder of the third parties to reach the assets of those entities. Third, the district court erred in its application of the summary judgment standard in concluding that Citibank had satisfied its high burden to reverse pierce the corporate veils against the third parties Aralpa Miami and 157. First, turning to the choice of law issue. It's undisputed that this court, sitting in diversity, applies the New York choice of law principles. And this court, applying those principles, has repeatedly held that the law of the state of incorporation and veil piercing cases should apply. That's in Fletcher. That's in Kalb. That's in other cases as well. Isn't there an exception recognized under New York law that also the state that has the greatest interest in the underlying action, its law should apply? Well, the New York Court of Appeals, in its most recent articulation of these principles, in the Ackley's case that's been cited by Apelli, held that the interest test that's applicable in this circumstance, where the internal affairs of the corporation is at issue, creates a very strong presumption that the state of incorporation applies, the law of the state of the corporation applies, with rare exception. And what the New York Court of Appeals said is that that exception can only be invoked where the interest of the place of incorporation is minimal and where another state, here would be New York, has a dominant interest. That is not the standard that the district court applied here. First of all, the court, even assuming that this balancing test should have been done, did not consider that there was a relationship that Aralpa Miami had to the state of Georgia beyond simply being incorporated there. Indeed, its formation documents identified that its principal place of business was in Georgia and there's nothing in the record to rebut that. But other than its principal place of business, what other factors affect Georgia's interest other than that? Well, Georgia has a very strong interest in prohibiting reverse veil piercing in the case of Georgia entities. In fact, in the Supreme Court... No, no, I know that Georgia law doesn't allow veil piercing and New York law does, which brings us to the issue today, which law should apply. My question is, what are the facts that you can point to, other than incorporation in Georgia, that makes Georgia's interest in this case being litigated in Georgia or under Georgia law more important? Yeah, so here under the New York Court of Appeals decision authority, which I just mentioned, you have the state of incorporation, you have there's nothing else in the record to point to the business conducting business anywhere else other than in Georgia. The principal assets of the company at issue were located in Florida. It was a real estate holding company. But not in Georgia? Not in Georgia. Right, so I'm looking for what happened in Georgia other than being the state of incorporation that would affect its interest. I mean, I know they have an interest in their law being applied, but in this particular case, when the contract was drawn up in New York and there's a choice of law of New York law to apply, correct? Well, that was the choice of law in the underlying loan agreement between the judgment debtor and the judgment creditor. This court in the Cald decision squarely rejected an argument that New York choice of law that's applicable to the underlying loan agreement does not apply to an alter ego analysis where Aralpa Miami is a stranger to that contract. May I ask you, your adversary will correct me if I'm wrong, but I think I understand them to be disputing whether or not Georgia is the principal place of business. Is that correct? They are disputing that. And give me your response to that. I know that that's what it says in the incorporation document, but do we now have a fact questioning or is there something in the record that says there is some business being conducted in Georgia? Well, there's nothing in the record that says there's business conducted in New York. There's nothing in the record that rebuts that the company did its principal business in any state other than Georgia, with the only other facts in the record being that the, uh, the assets of this company were always located in Florida, not in New York. And I just wanted to briefly, uh, if, uh, the court would. Well, let me ask you this in anticipation of your adversary, perhaps arguing something. If there is a fact question about what, if any business is being conducted in Georgia, how does that affect your argument about error by the district court? If at all. Yeah, well, I would respond as follows, that Citibank had the burden of proof before the. Because they're looking for an exception. Yes, because they're looking for an exception. They had a full and fair opportunity to put in whatever evidence was necessary to prove that the law, um, other than Georgia would apply. So we'd submit this court can determine based on this record that, uh, it was error to apply New York law and Georgia law should have applied. With the other prong of the analysis being whether New York has a dominant interest. And we submit the court erred in several ways. First of all, um, placing great emphasis on the fact that there was a New York choice of law provision, uh, in the agreement that Aralpa Miami was not even party to by pointing to the fact that Citibank issued bank statements from New York. Um, there's no basis and there's no cases of which we're aware, holding that what a judgment creditor does unilaterally from its home jurisdiction should bear on its analysis. And you look at all the other facts in the record. Citibank says its principal place of business is in New York. It claimed it was a South Dakota citizen for purposes of this litigation. The witnesses who submitted fact declarations about their involvement in this transaction are located outside. One of the assets that's part and parcel of this loan agreement or secured by the loan agreement is located in New York, right? The, the, the, the loan was secured by, uh, equity interest in a Mexican company called Unifin. So the, the assets that secured the loan were not located, uh, in New York. Um, what Citibank had security on was an apartment in New York of $157, but that was a separate loan agreement. And that gets to the heart of why Citibank's case fails. Because it's undisputed that Citibank issued separate loans to these companies. The, the security over those properties secured those separate loans. So how can it be that Citibank can claim as it did before the district court and the district to secure both loans? No, that's not correct, Your Honor. In fact, what the record shows is that, um, when Citibank was looking to, uh, engage in workout discussions about this loan with Mr. LeBlanc, it asked for additional collateral of the assets of these third parties. And, uh, there's a term sheet in the record, uh, at, uh, page 596 in the appendix. That shows that Citibank was seeking these very properties as additional collateral. And our clients did not agree to provide that collateral. But that shows that Citibank always knew that these were separate entities. Well, yes. Oh, I'm sorry, please. Let me ask you, because you've just talked about separate loans. There was a $20 million line of credit to Arapa Holdings that LeBlanc personally guaranteed, right? Yes. That's the transaction that's at issue here. Correct, Your Honor. And that transaction, that million, $20 million line of credit, isn't that what's secured by the assets of Arapa Miami in 157? No, Your Honor. There was a separate, um, two separate loans. One for about $5 million made to 157. That's, uh, in the record at appendix page 88. But that's not the, that's not the transaction that they're seeking this, um, writ of execution and turnover under. That they're seeking on the $20 million line of credit. Correct. Or have I misunderstood? No, you're correct. All right. And LeBlanc personally guarantees that transaction, and he repeatedly represents to Citibank that he has substantial personal assets, which include the assets of Arapa Miami in 157. Or again, have I misunderstood? Well, um, those assets are listed on the personal financial statement. Right. In connection with that loan, there is a dispute about whether listing those assets constitutes a representation to Citibank, that those are his... That's a separate question. But to the extent we've started going down this line by suggesting that an asset that's at issue in this execution, um, writ dispute about the $20 million line of credit, one of the assets is 157, if I understand correctly. That asset was listed on the personal financial statement. Which is in New York, which is what gives New York an interest. So that's for 157. We don't dispute New York law applies to that entity. What, um, we're talking about in terms of the choice of law, is Arapa Miami, which is the Georgia company, which always held its property in Miami. It was Miami real estate. It was sold. And its principal asset today is money in a bank account in Florida. If you secure an obligation with multiple pieces of property, and one is in New York, why isn't that enough to then weigh what New York's interest is? I understand you'd say, well, not the Arapa Miami. But, but that doesn't mean that the, um, the $20 million line of credit isn't something that New York has an interest in. I would say New York has an interest, um, to the extent of the property that's located in New York. I'm not sure what that means. Because we're talking about whether New York law would apply. Not that it would apply with respect to one of the properties that's used as security, but not the other property. It applies with respect to the dispute over the $20 million line of credit. Exactly. But this is a separate dispute, whether Arapa Miami should be found to be the alter ego of the borrower. So what Citibank has done is, in one application, requested that two entities, the New York entity and the Georgia entity, be deemed the alter egos. And so I don't believe there is any dispute that the court needs to do a choice of law analysis as to each entity. And shouldn't just collapse the two and say, if New York law applies to one, it should apply to both. And I don't believe that's consistent with the authority, under this court's authority and the New York Court of Appeals authority, which looks to the state of a corporation first and foremost. So if you have multiple entities, it would not line up with that reasoning to say that you just look to one entity as opposed to looking at each entity individually. Thank you. Thank you. Counsel, you have reserved two minutes for rebuttal. Thank you. So Good afternoon, Your Honors. Adam Kauf for Apelli Citibank. This court should affirm the district court's order. First, I'm going to talk about the choice of law issue. The district court correctly found that New York law applies to the veil-piercing claims against Aralpa, Miami, because Aralpa, Miami has no connection to Georgia other than being formed there. And New York's interest in this dispute is significant. What's the basis for your assertion that they have no connection to Georgia other than being incorporated there? Do we have record evidence of that? Yes, we do. First of all, it does no business in Georgia. You can look to the Plotnicki Declaration for that. It has no physical office anywhere. Again, you can look to the Plotnicki Declaration for that. Aralpa, Miami is a real estate holding company. It at one point owned a home in Florida. It now owns a bank account in Florida. Its direct title owner is Aralpa Capital, a Mexican corporation. Its members are Mexican citizens. The address that the bank account sends documents to, their two addresses are in Texas and Mexico. There is no connection to Georgia. Aralpa, Miami has zero connection to Georgia other than being formed there. And therefore, Georgia has no interest in this dispute. Appellants point to Kalb and Fletcher and they say, well, they compel this court to apply the law of the state of incorporation. But those cases don't say that the state of incorporation's law always applies, as your honors have pointed out. Indeed, in Fillmore East, this court held that it generally not always applies. We've cited a number of appellate division cases, as well as district court decisions from this circuit, showing that New York does not apply a bright line test when deciding choice of law issues in veil-piercing cases. Recently, the Court of Appeals in Eccles, a case that was issued after the district court's decision in this case, confirms that approach. Eccles, which was an internal affairs case involving the internal affairs of a corporation, found that there was a rebuttable presumption that the law of the state of incorporation would apply. And that that presumption can be overridden when the state of incorporation has a minimal interest or connection to the dispute. And there is another jurisdiction with a more dominant interest in the dispute. This is the same test that the district court applied. Although Eccles was an internal affairs case, there's no reason to believe that the Court of Appeals would decide any differently for veil-piercing claims. Indeed, veil-piercing claims, there's arguably less of a reason to defer to the state of incorporation, because in veil-piercing claims, you're looking at third parties vis-a-vis the corporation and not disputes between members or people who are associated with that corporation. So not only did the district court correctly decide that an interest analysis is required here, but it applied that test correctly, finding that Aralpa, Miami has no connection with Georgia other than being formed there. And New York has a dominant interest in this dispute. How do you respond to your opponent's argument that essentially these are two loans or properties securing two separate portions of a loan? I understood this to be two separate properties being used as guarantee, personal and otherwise, for a $20 million loan, a single loan. Yeah. So how do you respond to that argument? Yes, Your Honor. What happened here is Mr. Lebois personally guaranteed this loan. And as part of the personal guarantee, he was required to submit personal financial statements. On those personal financial statements, he listed the assets of Aralpa, Miami and 157, telling Citi that these assets are available to pay down the loan should the collateral not be available. I'm curious as to Citi Bank's acceptance of that representation. We're not dealing with a naive lender here. And so you know that what's being pledged by an individual are corporate assets. It would seem to me a rather easy request to ask to have a statement by the corporate board or whoever had authority to act for the corporation that, yes, indeed, if Mr. Lebois wanted to draw on the assets of that corporation or corporate entity, he could. But you didn't even ask for that. And that seems to me to be to raise questions about due diligence here. What am I missing? Well, Citi is required here in order to pierce the veils of 157 and Aralpa, Miami. Citi is required to show that Mr. Lebois committed a wrong and then that wrong caused an injury to Citi. Here, Mr. Lebois put these assets, totally ignoring the corporate form of Aralpa, Miami and 157, and putting the assets. These are homes. But Citi Bank ignored it too, right? I'm sorry. Citi Bank ignored it too, ignored that these were corporate assets. Well, Citi Bank, regardless of... How does someone take a representation from a private individual that it can pledge the assets of a corporation, that he can pledge the assets of a corporation? I think regardless of how the assets were directly titled, Citi believed that Mr. Lebois ultimately owned these assets and that they could be used to pay off the loan. And that is undisputed in the record. If you can look to the Plotnicki Declaration, paragraph 42 and A69 for that. In addition, Citi is not... To pierce the veil, Citi is required to show that there was a wrong, not to prove that there was fraud or reliance. In fact, Citi did believe that Lebois, and relied on the fact that Lebois was making these representations to both extend the loan and to make the loan and to... And the district court found that the wrongful conduct was this judgment-proofing conduct, saying these are my assets, you can have them as security. And then when they go to them to execute on them as security, the claim is they're not my assets, they're corporate assets, they're not my own. And the court called it the judgment-proofing conduct. But I think what we're trying to get at is, shouldn't Citi Bank have seen that coming? Knowing that it wasn't news to them that these were corporations, and at the same time, he is pledging them as his own personal property. Why? Citi believed that he ultimately owned these, not because of some actions by Citi, but the actions by Lebois. He's putting these assets on his personal financial statement as part of the guarantee. The guarantee requires Mr. Lebois to show what are the assets that are his. And he's then putting these assets of Aralpa Miami, ignoring the corporate form, and 157, ignoring the corporate form, on his personal financial statements. That's the whole point of the person. The problem is not what you can do with respect to Mr. Lebois. It's that now you want to go after the corporation, which did not speak up in any of this. It made no representations. And that's the point of my asking you, once you are on notice that these were corporate assets that were being pledged by a private person, what reasonable diligence obligations did Citi Bank have to ensure that the corporation was indeed prepared to have its assets pledged by this man? It's not just that he's putting them on a personal financial statement, right? If you look at the record, you're going to find operating agreements showing that he is the manager of these corporations. Documents would show that he signed bank applications and mortgage applications on behalf of these corporations, that they used his address, that he guaranteed their debts, that he paid the debts from his personal accounts, that he offered the assets of 157 to resolve this dispute in August of 2023, just before the judgment issued. There's, it's uncontrovertible that he, and uncontroverted, that he used the assets to commit a wrong. He put, he totally ignored the corporate form when it was in his interest to obtain the loan and put these assets on his personal financial statement. And then when he was called to pay the loan, he says, oh, I'm going to hide behind the corporate form. That is a complete abuse of that corporate form. I see my time is up. Thank you very much. Thank you, Counselor. On rebuttal at the outset, the first point I wanted to clarify is that the assets of 157 and Aralpan Miami did not secure the loan at issue. These were, as the panel noted, separate assets, separate corporations. And in fact, going to the point about Citibank being on notice, they knew that these assets were not owned by Mr. LeBlanc personally. In fact, they knew not only they were owned by these entities, but that those entities in turn were owned by another company. How do we know that? Because in the record, when it came time for Citibank to try and work out this loan, they requested that these specific properties be pledged as additional collateral. That's in the record at Appendix 596. And within that term sheet, when they identified these properties, they noted that they were owned by those entities, in turn, and I'm quoting here, owned 100% by Aralpa Capital. Aralpa Capital is indisputably the shareholder of these companies. And that is something the district court ignored and said that it had a right to ignore, in our view, misconstruing New York law on whether it had to pierce every layer of the corporate veil. Okay. Why are these properties listed at all? What's the purpose, if not the purpose suggested by opposing counsel? Well, the record is not clear on the purpose of the personal financial statements. But what the record does not show is that the person- That's a little unusual, huh? Yeah. It appears that it was some signal or proxy for the net worth of Mr. LeBlanc. But nowhere within the loan documents does it say that these are assets available for execution upon default of the loan. Citibank's a sophisticated institution. It knows how to request collateral when it wants. What would have been your advice to them, knowing what you now know to be their position? What is your advice as to what the bank should have required to achieve the objective which they're now pressing upon us? They should have insisted that these assets be pledged at the outset from the beginning. And that gets to the core of what's going on here. Citibank couldn't get these assets consensually. And now it's seeking to use the remedy of reverse veil piercing as a way to cross-collateralize these different loans. Thank you. Thank you, counsel. We'll take the matter under advisement and reserve decision.